## Schwartz, Appellant, *v.* Wagner.

Argued June 22, 1956.   Before STERN, C. J., JONES, BELL and CHIDSEY, JJ.

*Robert K. Greenfield,* with him *Thomas F. Devine, Julian W. Barnard* and *Folz, Bard, Kamsler, Goodis & Greenfield,* for appellants.

*Morris Gerber,* with him *Samuel H. High, Wisler, Pearlstine, Talone & Gerber,* and *High, Swartz, Childs & Roberts,* for appellees.

OPINION PER CURIAM, June 26, 1956:

The order here on appeal is affirmed on the following excerpts from the opinion of President Judge KNIGHT for the learned court below:

"On June 7, 1955, the '7900 Old York Road Corporation' through its counsel, applied for a special exception to permit it to erect an eight story apartment house which will be in excess of sixty-five feet in height, but not more than eighty-five feet in height.

"After due notice by advertisement and otherwise and after a public hearing the Board rendered the following decision: 'And now, to wit, this 27th day of August A.D. 1955, the petition of 7900 Old York Road Corporation for an exception in order to construct a multiple dwelling on its premises situate the northwest corner of Old York Road and Spring Avenue, Elkins Park, Pennsylvania, is hereby granted, subject to the condition that the building be constructed in accordance with plans approved by the Commissioners of Cheltenham Township.'

"We cite the application and quote the decision because we are met at the beginning with the question of whether we are considering the change in height from 65 to 85 feet or whether we are considering the erection of an apartment house on the tract in question.

"The application is made by virtue of Sec. 1401 of Article IV of the Cheltenham Zoning Ordinance of 1929 as amended by Ordinance 639 in 1941 and further amended by Ordinance No. 829, approved January 18, 1955.

"Sec. 1401 of the original ordinance limits the height of buildings in the Township to 65 feet, the amendment of 1955 permits an additional height of 20 feet if granted as a special exception by the Board of Adjustment. Since the application was made under the

provisions of Section 1401 as amended, it would certainly appear that the only thing the Board of Adjustment had before them was the additional height of twenty feet.

"We have no difficulty whatever in finding that the Board committed no error in law, nor did they abuse their discretion. The proposed apartment house will have the same number of units as one previously approved by the Board of Adjustment. The increased height will augment the parking area, and the lot area per family will not be reduced. We cannot see how the addition of 20 feet in height on a building set near the centre of a fourteen acre tract would have any appreciable effect upon the residential character of the neighborhood.

"This very tract of land was the subject of litigation in this court in 1950. The land is situated in a B-Residence Zone in which multiple dwellings are permitted when allowed by a special exception granted by the Board of Adjustment. In 1950 the then owners of the tract applied to the Board for a special exception permitting them to build an apartment house containing 230 units. The Board granted the special exception. A number of the neighbors appealed to this court which affirmed the Board. (See *Appeal of Borden et al.*, April Term, 1950, No. 14.) An appeal was taken to the Supreme Court, which in a unanimous decision affirmed the judgment of this Court. (See *Borden Appeal*, 369 Pa. Supreme Ct. 517 (1952).) The Supreme Court decision was handed down in March 1952 and between then and June 1955 when the application was made for the present desired exception, nothing of an official nature was done in reference to building on the tract in question. The appellants contend that this delay constituted an abandonment of the special exception granted in 1950 and that this present application

must be treated as a new application for a special exception to build an apartment house. . . .

"It is important to establish the status of the former exception and its relation to the present application for the former application was granted subject to certain conditions which do not appear in the record before us. For instance, there was a condition that the land on the site, not used for the proposed buildings, should remain open and unbuilt upon for thirty years. The record before us discloses no such condition. The buildings contemplated in the two applications are similar in size and contain the same number of units, namely, 230. The size of the site is nearly the same, $13\frac{1}{2}$ acres in the former application, 14 in this one. The entrances and exits in both schemes of development are substantially the same.

". . . The Commissioners of Cheltenham Township . . . by amendment to the Zoning Ordinance of the Township, adopted June 21, 1955, provided that all variances or exceptions shall be effective for two years only and if not acted on in that time, they shall become void. Exceptions and variances granted previous to the adoption of the amendment are granted two years from the date of the amendment.

"It would seem . . . that the exception granted for the tract in question in 1950 is still in force and enures to the benefit of the applicant, the intervenor, who has a right to exercise the privilege granted by the exception until June 1, 1957, by virtue of the amendment, *supra.*

"It would also seem that the present exception applies only to the additional 20 feet in height. The findings of fact of the Board of Adjustment, which we adopt as our own, indicate that that body relied upon *Borden's Appeal, supra,* as establishing the fact that the site in question was suitable for an apartment house.

"Even if we were to consider this as a new application without any reference to the exception granted in 1950 we would hold that the Board made no mistake in law nor did it abuse its discretion in granting the present exception.

"The appellants both before the Board and in this Court were woefully weak in their objections to the increased height; what they objected to was any apartment house of whatever height.

"In the *Borden* case extensive evidence was heard both before the Board and in this Court. Experts were called by both sides. Every objection made by the appellants in this case, to the proposed apartment house, was made at that time and fully considered by the Board and this Court. We held in the *Borden* case that the Board had made no error in law, nor had it abused its discretion in granting a special exception and we see no reason to hold differently in the present case. . . .

"We have decided this case on the abuse of discretion rule, but were we deciding it upon the merits we would reach the same conclusion. The great weight of the qualified evidence shows that the tract in question is well suited for apartment house purposes and that its highest and best use is for an apartment house. We are convinced that the public health, safety, morals, and welfare will not be diminished by the erection of the proposed structure."

The appellants' further contention that the learned hearing judge erred in not permitting them to call the majority stockholder (who was neither a director nor an officer) of the corporate applicant, as for cross-examination, merits no discussion. The Act of May 23, 1887, P. L. 158, as amended by the Act of March 30, 1911, P. L. 35, 28 PS §381, does not apply to a stockholder.

Order affirmed at the appellants' costs.